UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

K.E., *individually and on behalf of* M.L., *a child with a disability*,

                    Plaintiff,

          -v.-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                    Defendant.

21 Civ. 2815 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff K.E., individually and on behalf of M.L., a child with a disability, brings this action pursuant to a provision of the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1415, that allows courts to award attorneys' fees and costs. Pending before the Court now is Plaintiff's motion for summary judgment, seeking attorneys' fees and costs for work performed by Plaintiff's counsel, the Cuddy Law Firm ("CLF"), for two related administrative proceedings as well as this federal action. As set forth in the remainder of this Opinion, Plaintiff's motion is granted in part.

## BACKGROUND[1]

### A.    The Parties and the Administrative Proceedings

M.L. is a child with a disability as defined by the IDEA, 20 U.S.C. § 1401(3)(A) (Pl. 56.1 ¶¶ 2, 5), and K.E. is M.L.'s parent (*id.* at ¶ 1). Defendant

---

[1]    The facts set forth in this Opinion are drawn from the parties' submissions in connection with Plaintiff's summary judgment motion, including Plaintiff's statement of undisputed material facts pursuant to S.D.N.Y. Local Civil Rule 56.1 ("Pl. 56.1" (Dkt. #22)), and Defendant's Rule 56.1 counterstatement ("Def. 56.1" (Dkt. #31)). Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein. *See* Local Civil Rule 56.1(d). The Court also draws from various declarations submitted

New York City Department of Education ("Defendant" or "DOE") is a local educational agency as defined by the IDEA, 20 U.S.C. § 1401(19).  (Compl. ¶ 5).

### 1.  The First Administrative Proceeding ("IH 175911")

The timeline of the administrative proceedings is detailed in Plaintiff's opening memorandum (*see* Pl. Br. 2-3), and is generally not disputed by Defendant.  In or about April 2018, Plaintiff consulted with, and subsequently retained, CLF to represent her regarding the educational needs of M.L.  (Cuddy Decl. (Dkt. #25), Ex. A).  On August 28, 2018, CLF filed an 11-page due process complaint on Plaintiff's behalf, alleging DOE's denial of a free appropriate public education ("FAPE") to M.L. during the 2017-2018 and 2018-2019 school years and numerous IDEA violations that contributed to that denial.  (*Id.* at ¶¶ 41-60 & Ex. F).  Among other forms of relief, Plaintiff sought annulment of the then-existing individualized education program ("IEP"), provision of a full-time individual service paraprofessional, various evaluations and assessments to be conducted or funded by DOE, placement in a state-approved nonpublic school, and compensatory educational services.  (*Id.*, Ex. F at 8-10).

---

by the parties and their exhibits, which declarations are cited using the convention "[Name] Decl." or "[Name] Reply Decl.," and from the Complaint (Dkt. #1).

For ease of reference, the Court refers to Plaintiff's opening brief as "Pl. Br." (Dkt. #24); to Defendant's opposition brief as "Def. Opp." (Dkt. #37); and to Plaintiff's reply brief as "Pl. Reply" (Dkt. #40).

In a prior decision involving CLF, the Court expressed its concern that counsel was circumventing page limits by including extensive legal and factual arguments in their supporting declarations.  *See D.P.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ. 27 (KPF), 2022 WL 103536, at *1 n.1 (S.D.N.Y. Jan. 10, 2022).  Because briefing on the instant motion concluded before the issuance of that decision, the Court will not reiterate the point here.

DOE contested not only Plaintiff's allegations concerning the FAPE, but also M.L.'s right to pendency at Ocean Prep Charter School, necessitating a pendency hearing that took place on September 28, 2018, before Impartial Hearing Officer ("IHO") Michael Kennedy Lloyd.  (Cuddy Decl. ¶¶ 48-50 & Ex. H).[2]  One month later, on October 28, 2018, IHO Lloyd issued a pendency decision that, among other things, ordered DOE to provide funding for "the related services, and assistive technology and 1:1 paraprofessional and placement at the Ocean Prep Charter School."  (*Id.*, Ex. H at 4).

IHO Lloyd held hearings on Plaintiff's due process complaint on November 9, 2018; January 9, 2019; February 1, 2019; April 5, 2019; and May 2, 2019.  (Pl. 56.1 ¶ 11; *see also* Lawrence Decl. (Dkt. #32) ¶ 10 (noting that hearings totaled 14.5 hours)).  Over the course of the hearings, Plaintiff introduced 41 documentary exhibits and presented testimony from four witnesses, while DOE introduced five exhibits and presented testimony from two witnesses.  (Pl. 56.1 ¶¶ 12-14).  Each side then submitted a closing brief after the hearings were completed.  (*Id.* at ¶¶ 15-16).

On June 13, 2019, IHO Lloyd issued a fourteen-page Findings of Fact and Decision.  (Cuddy Decl. ¶ 17 & Ex. K).  At the outset, he noted that Plaintiff had withdrawn her challenge to the 2017-2018 IEP at one of the hearings.  (*Id.*, Ex. K at 5).  Then, after reviewing the parties' positions and

---

[2]     IHO Lloyd indicated in his pendency decision Court that DOE "consent[ed] to the pendency placement as described" in one of the two exhibits submitted by Plaintiff. (Cuddy Decl., Ex. H at 3; *see also id.* (noting that "[p]endency commences with the filing of a Demand for an Impartial Hearing," which occurred on August 28, 2018)).

summarizing the relevant law, IHO Lloyd found that M.L. had in fact been "provided a FAPE at the April 2018 IEP meeting and the program created by that IEP … was competent to provide the student the opportunity to acquire academic skills and make progress." (*Id.*, Ex. K at 10).  Moreover, while acknowledging "that [DOE] did not obtain evaluations in speech occupational and physical therapeutic services," IHO Lloyd found that "the teacher and service providers who authored progress reports … were thorough and provided an accurate picture of the student's performance and continuing needs." (*Id.*). He further found that M.L.'s "intended placement by the IEP team in a 12:1 special class in a community school with related services [was] proper and appropriate for the student to obtain an educational benefit." (*Id.*).  However, IHO Lloyd found that an earlier interim order in the case had not been implemented properly, and ordered compensatory services in the form of a paraprofessional assigned to M.L. on a 1:1 basis for the period from September through December 2019.  (*Id.*).

Plaintiff sought review from the State Education Department Office of State Review.  (Pl. 56.1 ¶¶ 18-19).  On August 23, 2019, State Review Officer ("SRO") Sarah L. Harrington issued a 33-page decision reversing the IHO's decision in part.  (Cuddy Decl., Ex. L).  In particular, the SRO found that "the information considered by the April 2019 [Committee on Special Education ("CSE")] showed that [M.L.] required more individualized adult support to address his attention needs than what was offered in the April 2018 IEP." (*Id.* at 14).  As support for her finding, the SRO cited the April 2017 IEP, various

reports from the charter school regarding M.L.'s distractibility, a neuropsychologist's evaluation report, and various teacher progress reports. (*Id.* at 14-19).

At the same time, the SRO rejected the remainder of Plaintiff's claims on review. *First*, Plaintiff had challenged the removal of M.L.'s laptop, arguing that the student needed this or some other form of assistive technology. (Cuddy Decl., Ex. L at 19-22). The SRO found that "the CSE's conclusion to not recommend that particular assistive technology device for use during the 2018-19 school year is amply supported by the hearing record," though she ordered DOE to conduct a more up-to-date assistive technology evaluation if it had not already done so. (*Id.* at 21-22). *Second*, the SRO rejected Plaintiff's claims that DOE's failure to specify a particular reading methodology, such as Orton-Gillingham or the Wilson Reading System, amounted to a denial of a FAPE, citing the absence of a dispute "regarding the April 2018 IEP's description of the student's reading needs," and noting that "the IEP addresses those needs via specific annual goals and recommendations for the use of multisensory, evidence-based programs that incorporate visual support and small group instruction — recommendations consistent with those from the neuropsychologist." (*Id.* at 24). *Third*, the SRO noted that Plaintiff's claims for transitional support services were not adequately set forth in her due process complaint, and that any failure by DOE to include such services would not rise to the level of a denial of a FAPE. (*Id.* at 24-26).

With particular respect to the forms of relief sought, Plaintiff again achieved only partial success. To begin, the SRO rejected Plaintiff's request for additional compensatory education services, noting that (i) Plaintiff had made certain claims for relief in her due process complaint that she elected not to pursue during the hearings before the IHO, and (ii) the IHO had ordered certain forms of relief from which Plaintiff did not seek review. (Cuddy Decl., Ex. L at 26-27). According to the SRO, "[b]ased on the student's receipt of 1:1 paraprofessional services during the 2018-19 school year pursuant to pendency and the standing compensatory award for the lapse in pendency services, there does not appear to be a further 'need for education restor[ation], and it appears the student may be deemed whole, making further award of educational services unnecessary." (*Id.* at 28-29 (internal quotations omitted)). The SRO also declined to order prospective placement of M.L. in a non-public school, which placement she believed would undermine the authority of the CSE. (*Id.* at 29). And echoing her prior FAPE determination, the SRO rejected Plaintiff's requests to require the IEP to specify particular methodologies.

The SRO did find that Plaintiff had demonstrated the need for an independent educational evaluation, in the form of a functional behavioral assessment. (Cuddy Decl., Ex. L at 30-31). She reiterated her directive to DOE to update the assistive technology evaluation. (*Id.* at 33). And she ordered the CSE to reconvene upon completion of these evaluations. (*Id.*).

2.      **The Second Administrative Proceeding ("IH 194397")**

One year later, on June 12, 2020, Plaintiff filed a second due process

complaint claiming the denial of a FAPE for the 2019-2020 and 2020-2021

school years.  (Pl. 56.1 ¶ 23; Mendillo Decl. (Dkt. #20) ¶¶ 11-13 & Ex. A).  In

the nine-page document, Plaintiff sought, among other forms of relief, DOE

funding for a neuropsychological evaluation of M.L.; amendment of the relevant

IEP to include a provision for "evidence-based academic methodology," certain

specified assistive technologies, integration of related services, and social skills

goals; placement of M.L. at either a public school that was able to provide a

particularized slate of services or, if none was located, a state-approved

nonpublic school; and compensatory academic instruction and services.

(Mendillo Decl., Ex. A at 7-9).

DOE appointed Helene Peyser as the IHO and a hearing was held on

December 1, 2020.  (Pl. 56.1 ¶¶ 27-28; Mendillo Decl., Ex. B (Findings of Fact

and Decision)).[3]  Plaintiff submitted 14 exhibits, including an affidavit from a

neuropsychologist; Defendant submitted four exhibits but offered no testimony.

(Pl. 56.1 ¶ 29).[4]  According to IHO Peyser, the four exhibits

> do not alone adequately prove a provision of FAPE to
> Student.  [DOE] failed to present testimonial evidence
> regarding a provision of FAPE to Student. Thus, this
> hearing officer finds that [DOE] failed to meet its burden
> of proof at hearing and denied Student a FAPE for the

---

[3]     According to Plaintiff's counsel, DOE offered only a partial resolution agreement in July
2020, and failed to issue a due process response that would have identified for Plaintiff
the issues in dispute.  (Mendillo Decl. ¶¶ 17-18).

[4]     IHO Peyser notes in her Findings of Fact and Decision that DOE sought adjournment of
the hearing on the date it was scheduled, which request she denied, leaving DOE
unprepared for the proceeding.  (Mendillo Decl., Ex. B at 3-4).

school years at issue in this case. [DOE]'s failure triggers Parent's right to relief.

(Mendillo Decl., Ex. B at 4). On the specific issue of the relief sought, IHO Peyser granted Plaintiff's request for DOE reimbursement of funds expended for an independent neuropsychological examination, which, depending on the circumstances, might be required to be considered by the CSE "in any decision made with respect to the provision of [a] FAPE to a student." (*Id.*; *see also id.* at 6 (requiring the CSE to be reconvened within 30 days to amend the IEP and offer placement in compliance with the recommendations of the neuropsychologist)). IHO Peyser also granted Plaintiff's request for compensatory education in the form of 600 hours of 1:1 academic tutoring services. (*Id.* at 5-6). Finally, IHO Peyser ordered a change in M.L.'s placement "in compliance with the recommendations made by" the neuropsychologist. Neither side appealed from the IHO's decision.

## B.    The Federal Proceedings

In January 2021, Plaintiff, through counsel, submitted demands for attorneys' fees for both administrative proceedings to DOE's Office of Legal Services. (Pl. 56.1 ¶ 21; Cuddy Decl. ¶¶ 67, 69). When no substantive responses was received, Plaintiff filed the instant action, seeking attorneys' fees and costs for all three matters. (Dkt. #1; Cuddy Decl. ¶¶ 71-73; Mendillo Decl. ¶¶ 27-28).

The Court granted two requests from defense counsel for extensions of time to respond to the Complaint. (Dkt. #7, 10). DOE then filed its answer on August 2, 2021. (Dkt. #11). On August 11, 2021, DOE requested an

adjournment of the initial pretrial conference in the matter, in order to permit the parties to continue settlement discussions; the Court granted the request, and ordered the parties to submit a status letter on or before September 13, 2021.  (Dkt. #12, 13).  On September 10, 2021, defense counsel advised the Court that DOE had made a settlement offer that expired on September 6, 2021, without being accepted by Plaintiff, and presented a jointly proposed briefing schedule for Plaintiff's motion for summary judgment.  (Dkt. #15; *see also* Dkt. #16 (Endorsement of September 13, 2021, adopting the parties' schedule)).

Plaintiff's opening memorandum and supporting declarations and materials were filed on November 2, 2021.  (Dkt. #17-25).  Defendant's submissions in opposition were filed on December 16, 2021.  (Dkt. #31-38).  Plaintiff's reply submissions were filed on January 3, 2022.  (Dkt. #39-40).  Thereafter, each side submitted supplemental letters advising the Court of IDEA fees decisions issued by other judges in this District.  (Dkt. #41-43, 45).

## APPLICABLE LAW

**A.  Applicable Law**

**1.  Motions for Summary Judgment Under Fed. R. Civ. P. 56**

Pursuant to Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

9

to judgment as a matter of law." *Id.*; *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-23 (1986).[5]  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Est. Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

---

[5]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  The Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

2.    **Attorneys' Fees Under the IDEA**

a.    **The Purpose of the Fee-Shifting Provision**

"The IDEA aims 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'" *A.R. ex rel. R.V.* v. *N.Y.C. Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir. 2005) (quoting 20 U.S.C. § 1400(d)(1)(A)).  To that end, the statute provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i).  The fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.  No bonus or multiplier may be used in calculating the fees awarded[.]"  *Id.* § 1415(i)(3)(C).

The construct of a "reasonable attorneys' fees" has been developed across multiple civil rights fee-shifting statutes.  *See A.R.*, 407 F.3d at 75 ("[W]e 'interpret the IDEA fee provisions in consonance with those of other fee-shifting statutes.'" (quoting *I.B. ex rel. Z.B.* v. *N.Y.C. Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003) (per curiam))); *see also S.N. ex rel. J.N.* v. *Pittsford Cent. Sch. Dist.*, 448 F.3d 601, 604 (2d Cir. 2006); *see generally Lilly* v. *City of New York*, 934 F.3d 222, 227-32 (2d Cir. 2019) (discussing the history of fee-shifting jurisprudence).  At its core, allowing attorneys' fees in a civil rights action "ensure[s] effective access to the judicial process for persons with civil rights grievances."  *Hensley* v. *Eckerhart*, 461 U.S. 424, 429 (1983).  "When a plaintiff

11

succeeds in remedying a civil rights violation, ... he serves 'as a "private attorney general," vindicating a policy that Congress considered of the highest priority.'" *Fox* v. *Vice*, 563 U.S. 826, 833 (2011) (quoting *Newman* v. *Piggie Park Enterps., Inc.*, 390 U.S. 400, 402 (1968) (per curiam)).  "[T]he fee-shifting feature of the IDEA — including the authority to award reasonable fees for the fee application itself — plays an important role in 'attract[ing] competent counsel' to a field where many plaintiffs with meritorious cases could not afford to pay such counsel themselves."  *G.T.* v. *N.Y.C. Dep't of Educ.*, No. 18 Civ. 11262 (GBD) (BCM), 2020 WL 1516403, at *10 (S.D.N.Y. Feb. 12, 2020) (quoting *Simmons* v. *N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009)), *report and recommendation adopted*, No. 18 Civ. 11262 (GBD) (BCM), 2020 WL 1503508 (S.D.N.Y. Mar. 30, 2020).

### b.     Determining a "Presumptively Reasonable Fee"

Attorneys' fees are typically awarded by determining the "'presumptively reasonable fee,'" often (if imprecisely) referred to as the "lodestar."  *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010).  This fee is calculated by multiplying the "reasonable hourly rate and the reasonable number of hours required by the case."  *Millea*, 658 F.3d at 166.  Courts may, only after the initial calculation of the presumptively reasonable fee, adjust the total when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  *Lilly*, 934

F.3d at 230 (quoting *Millea*, 658 F.3d at 167).  A district court possesses

considerable discretion in awarding attorneys' fees.  *See Millea*, 658 F.3d at

166; *see also Arbor Hill*, 522 F.3d at 190.

The Second Circuit clarified the process by which a district court

determines the reasonable hourly rate in *Lilly* v. *City of New York*:

> [T]he district court, in exercising its considerable
> discretion, [should] bear in mind *all* of the case-specific
> variables that we and other courts have identified as
> relevant to the reasonableness of attorney's fees in
> setting a reasonable hourly rate.  The reasonable hourly
> rate is the rate a paying client would be willing to pay.
> In determining what rate a paying client would be
> willing to pay, the district court should consider, among
> others, the *Johnson* factors; it should also bear in mind
> that a reasonable, paying client wishes to spend the
> minimum necessary to litigate the case effectively.  The
> district court should also consider that such an
> individual might be able to negotiate with his or her
> attorneys, using their desire to obtain the reputational
> benefits that might accrue from being associated with
> the case.   The district court should then use that
> reasonable hourly rate to calculate what can properly
> be termed the "presumptively reasonable fee."

*Lilly*, 934 F.3d at 230 (quoting *Arbor Hill*, 522 F.3d at 190).[6]  In this setting,

"the district court does not play the role of an uninformed arbiter but may look

---

[6]  The twelve factors enumerated in *Johnson* are: (i) the time and labor required; (ii) the
novelty and difficulty of the questions; (iii) the level of skill required to perform the legal
service properly; (iv) the preclusion of employment by the attorney due to acceptance of
the case; (v) the attorney's customary hourly rate; (vi) whether the fee is fixed or
contingent; (vii) the time limitations imposed by the client or the circumstances;
(viii) the amount involved in the case and results obtained; (ix) the experience,
reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the
nature and length of the professional relationship with the client; and (xii) awards in
similar cases.   *See Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*,
522 F.3d 182, 186 n.3 (2d Cir. 2008) (citing *Johnson* v. *Ga. Highway Express, Inc.*, 488
F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard* v. *Bergeron*,
489 U.S. 87 (1989)).

to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Bliven* v. *Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *DiFilippo* v. *Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)).

"To determine the reasonable hourly rate for each attorney, courts must look to the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Heng Chan* v. *Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007) (quoting *Gierlinger* v. *Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)). The Second Circuit's "forum rule" requires courts to "generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." *Simmons*, 575 F.3d at 174 (quoting *Arbor Hill,* 493 F.3d at 119).

When determining the reasonable number of hours, a court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Haley* v. *Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (internal quotation marks and citation omitted). In addition, a court should examine the hours expended by counsel with a view to the value of the work product to the client's case. *See Lunday* v. *City of Albany*, 42 F.3d 131, 133-34 (2d Cir. 1994) (per curiam). The court is to exclude "excessive, redundant[,] or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino* v. *Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

14

In determining whether hours are excessive, "the critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Samms* v. *Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant* v. *Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). And where "the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." *Yea Kim* v. *167 Nail Plaza, Inc.*, No. 05 Civ. 8560 (GBD) (GWG), 2009 WL 77876, at *4 (S.D.N.Y. Jan. 12, 2009) (internal quotation marks and citation omitted). A court also retains the discretion to make across-the-board percentage reductions to exclude unreasonable hours, colloquially referred to as "trimming the fat." *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987).

## B.    Analysis

### 1.    Overview of the Parties' Arguments

Earlier this year, this Court undertook a comprehensive review of IDEA attorneys' fees jurisprudence in this Circuit, with a particular focus on fee petitions submitted by CLF. *See D.P.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ. 27 (KPF), 2022 WL 103536 (S.D.N.Y. Jan. 10, 2022). As part of its review, the Court offered the following observations:

> The instant fee petition is significant for other reasons. It exists not merely because of a failure of settlement efforts (which is not uncommon and is not itself a cause for concern by the Court), but because each side has adopted a Manichean view of the IDEA administrative

> process that all but forecloses the possibility of settlement in most cases. …
>
> The Court has carefully considered both sides' arguments in making its fee determinations, and the fact that this Opinion will satisfy neither side is a sure sign of its correctness. However, the Court observes that there is little utility in the current stalemate between the parties. The continued adherence by Plaintiff's counsel to aspirational hourly rates that no court has awarded will lead only to further opinions significantly discounting those rates. And on that point, this Court has reviewed scores of fee petition decisions from sister courts in this District, including fee petitions in IDEA cases, and it remains unpersuaded by Plaintiff's counsel's claims of fundamental flaws in their analyses. Conversely, DOE can continue playing hardball by refusing to settle attorneys' fee demands from counsel in IDEA cases; however, the fact that courts frequently award attorneys' fees incurred in the resulting fee litigation (*i.e.*, "fees on fees") means, as a practical matter, that the difference between the initial fee demand and the reviewing court's ultimate fee award grows ever smaller once litigation is filed.

*D.P.*, 2022 WL 103536, at *6.

In connection with the instant motion, the Court undertook another survey of cases decided in this District since *D.P.*, and found that the legal landscape has changed little. Several sister courts in this District have resolved fee petitions involving CLF; all of them assessed reasonable hourly rates for the Firm's legal professionals that were lower than the rates sought, and almost all of them separately determined the reasonable number of hours to be a number less than the actual number of hours billed. *See, e.g.*, *Y.S.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ 2159 (RA), 2022 WL 4096071 (S.D.N.Y. Sept. 6, 2022); *C.B.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ 6914 (MKV), 2022 WL 3577837 (S.D.N.Y. Aug. 19, 2022); *T.A.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ.

7104 (GHW), 2022 WL 3577885 (S.D.N.Y. Aug. 19, 2022); *F.N.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ. 3379 (JPO), 2022 WL 3544128 (S.D.N.Y. Aug. 18, 2022); *B.C.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ. 2840 (ER), 2022 WL 3214374 (S.D.N.Y. Aug. 9, 2022); *M.M.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 6915 (ER), 2022 WL 3043218 (S.D.N.Y. Aug. 2, 2022); *R.P.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ. 4054 (JMF), 2022 WL 1239860 (S.D.N.Y. Apr. 27, 2022); *Bd. of Educ. of Yorktown Cent. Sch. Dist.* v. *C.S.*, No. 17 Civ. 6542 (VB), 2022 WL 831831 (S.D.N.Y. Mar. 21, 2022); *N.G.B.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 6571 (JGK), 2022 WL 800855 (S.D.N.Y. Mar. 16, 2022); *H.A.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 10785 (PAE), 2022 WL 580772 (S.D.N.Y. Feb. 25, 2022).  Plaintiff suggests in the briefing on the instant motion that judges in this District are erring as a consequence of herd mentality, but the fact remains that numerous judges have, independently and for different reasons, concluded that CLF's fees are simply too high to be reasonable.

The Court is also aware that CLF has sought clarification from the Second Circuit by appealing numerous decisions in which district courts have awarded the firm a reduced amount of fees.  The one recent pronouncement from the Circuit on this issue was a summary order in *S.J.* v. *N.Y.C. Dep't of Educ.*, No. 21-240-cv, 2022 WL 1409578 (2d Cir. May 4, 2022), where the Court affirmed Judge Lorna Schofield's adoption, as modified, of a report and recommendation that sharply reduced the hourly rates sought by CLF; reduced the number of hours sought; reduced certain of the costs for which counsel sought to be reimbursed; and declined to award pre-judgment interest, finding

no abuse of the district court's discretion.  *Id.* at *1.  Other appeals remain pending at the Circuit, and the Court understands that a number of them will be heard in tandem.  *See D.P.* v. *N.Y.C. Dep't of Educ.*, No. 22-259-cv, Dkt. #40 (2d Cir. May 24, 2022) (order directing appeals to be heard in tandem).

### 2. The Court Awards Reasonable Attorneys' Fees

#### a. DOE Did Not Unreasonably Protract the Final Resolution of the Proceedings

Before ascertaining the reasonable attorneys' fees for the above-described proceedings, the Court addresses, and rejects, Plaintiff's argument that no reduction is warranted because "Defendant unreasonably protracted the administrative hearing when it failed to adhere to legal procedures and timelines for the completion of impartial hearings."  (Pl. Br. 5).  Somewhat tellingly, Plaintiff offers *no* evidence of DOE protraction with respect to the first administrative proceeding, and notes with respect to the second only that DOE (i) failed to assign an IHO for five months, (ii) failed to hold a resolution meeting within the statutory period, and (iii) offered only a partial proposed resolution after the IHO was appointed.  (*Id.* at 3 (citing Mendillo Decl. ¶¶ 13, 16, 17)).

The IDEA provides that, with a single exception, "the court shall reduce ... the amount of the attorneys' fees awarded under this section" under any one of the following circumstances:

> (i) the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;
>
> (ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar

> services by attorneys of reasonably comparable skill, reputation, and experience;
>
> (iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or
>
> (iv) the attorney representing the parent did not provide to the local educational agency the appropriate information in the notice of the complaint described in subsection (b)(7)(A).

20 U.S.C. § 1415(i)(3)(F)(ii)-(iii).  That exception — on which Plaintiff's argument is predicated — is that the mandatory reductions in subparagraph F "shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section."  *Id.* § 1415(i)(3)(G).

Plaintiff's efforts to invoke the unreasonable protraction exception as a shield to prevent reductions in fees are unavailing.  Even accepting Plaintiff's arguments that DOE's action or inaction delayed resolution of the second proceeding, the Court is not willing to say that DOE "unreasonably protracted" any component of this case.  *M.M.*, 2022 WL 3043218, at *4 ("So long as it does not make the proceedings 'longer than what ordinarily would be needed,' a delay will not constitute unreasonable protraction.  Indeed, even 'disorganization and unpreparedness' do not necessarily constitute unreasonable protraction." (citing *M.H.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 1923 (LJL), 2021 WL 4804031, at *25 (S.D.N.Y. Oct. 13, 2021))).  Moreover, even assuming that DOE unreasonably protracted the dispute, that conclusion "would not entitle CLF to more than a reasonable attorney's fee calculated

based on the standards well established by the Supreme Court and in this Circuit." *M.H.*, 2021 WL 4804031, at *25 (collecting cases).  Accordingly, the Court proceeds to determine the reasonable attorneys' fees and costs in these matters.

### b.      Determining Reasonable Hourly Rates

As expected, the parties markedly disagree as to the reasonable hourly rates to be applied in this case.  Plaintiff proposes the following hourly rates for CLF legal professionals for their work on the first administrative proceeding, IH 175911:

- Nina Aasen, the lead counsel before IHO Lloyd, has been licensed to practice law since 1994.   CLF seeks an hourly rate of $550 for Ms. Aasen.  (Pl. Br. 17).

- Jason Sterne, the lead counsel during the SRO review, has been licensed to practice law since 1998.  CLF seeks an hourly rate of $550 for Mr. Sterne.  (*Id.*).

- Andrew Cuddy, CLF's managing attorney, has litigated hundreds of special education cases over the preceding 20 years.  Mr. Cuddy "contributed significantly to the oversight of the case, billing, negotiations, and the federal component of the case."  (*Id.* at 19).  CLF seeks an hourly rate of $550 for Mr. Cuddy.  (*Id.*).

- CLF seeks hourly rates of $425 for attorneys Benjamin Kopp, who joined CLF in 2018 and has been licensed to practice law since 2016, and Justin Coretti, who joined CLF in 2015 and has been licensed to practice law since 2013.  (Cuddy Decl. ¶ 94; Coretti Decl. (Dkt. #21) ¶¶ 3-4; Tasher Decl. (Dkt. #23) ¶¶ 79-80).   Plaintiff's fee petition does not describe their work on IH 175911, but the Court understands from reviewing the billing statements in the matter that Mr. Kopp was involved in the drafting of the hearing request, and that Mr. Coretti reviewed correspondence from IHO Lloyd.  (Cuddy Decl., Ex. A).

- CLF seeks hourly rates of $225 for paralegals Allison Bunnell, Amanda Pinchak, Sarah Woodard, John Slaski, Raul Velez (who worked at CLF as a paralegal and as an attorney), and Shobna Cuddy. (Pl. Br. 19; Cuddy Decl. ¶ 94; *see also* Tasher Decl. ¶ 78 (clarifying that Mr. Velez worked at CLF as a paralegal from February 2017 until August 2019, and as an attorney from August 2019 until February 2020)).

Plaintiff also proposes the following hourly rates for CLF legal professionals for their work on the second administrative proceeding, IH 194397:

- CLF seeks an hourly rate for Andrew Cuddy of $550. (Cuddy Decl. ¶ 94; Pl. Br. 19).

- Kevin Mendillo, the lead attorney on this matter, joined the firm in 2014 and has been licensed to practice law since 2011. (Cuddy Decl. ¶ 21; Tasher Decl. ¶ 76). CLF seeks an hourly rate for Mr. Mendillo of $450. (Pl. Br. 17).

- CLF seeks an hourly rate for Raul Velez, in his capacity as an attorney, of $375. (Cuddy Decl. ¶ 94). No information is provided in Plaintiff's brief concerning Mr. Velez's work on the case. However, the Court's review of the billing statement indicates that Mr. Velez had primary responsibility for interfacing with the client and reviewing materials related to the second administrative proceeding. (*Id.*, Ex. B).

- CLF seeks hourly rates of $225 for paralegals Allyson Green, Burhan Meghezzi, Cailin O'Donnell, Emma Bianco, and Shobna Cuddy. (Cuddy Decl. ¶ 94; Pl. Br. 19).

Finally, Plaintiff proposes the following hourly rates for CLF legal professionals for their work in the instant litigation:

- CLF seeks an hourly rate for Andrew Cuddy of $550. (Cuddy Decl. ¶ 94).

21

- CLF seeks an hourly rate for Kevin Mendillo of $450. (*Id.*; Pl. Br. 17-18).

- CLF seeks an hourly rate for Justin Coretti of $425. (Cuddy Decl. ¶ 94; Pl. Br. 19).

- CLF seeks hourly rates of $225 for paralegals Shobna Cuddy and Cailin O'Donnell. (Cuddy Decl. ¶ 94; Pl. Br. 19-20).

Plaintiff has submitted several supporting declarations with information regarding the legal experience of these professionals. (*See* Cuddy Decl.; *id.*, Ex. B (resumes of certain CLF professionals); Coretti Decl.; Mendillo Decl.; *see also* Tasher Decl. ¶¶ 64-84 (outlining experiences of CLF legal professionals)).

DOE strenuously objects to the hourly rates sought, arguing, among other things, that: (i) "a plethora of recent decisions from Judges on the Southern District bench — assigning hourly rates for the same CLF staff at issue here — establish that Plaintiff's 'billed' hourly rates are grossly excessive" (Def. Opp. 1 (collecting cases)); (ii) "the underlying administrative proceedings in this matter did not raise novel or difficult questions" (*id.* at 2); (iii) Plaintiff's proffered "community rates" based on declarations from fellow practitioners in the IDEA space reflect unhelpful, "cherry-picked information" (*id.* at 6, 11); (iv) despite the number of proceedings, Plaintiff "obtain[ed] very little actual relief" (*id.* at 8); and (v) the second administrative proceeding was only lightly contested (*id.* at 9-10). Defendant argues for hourly rates no greater than $350 for CLF's senior attorneys; $200 to $275 for CLF's junior attorneys; and $100 for CLF's paralegals. (*Id.* at 3).

22

As it happens, both sides' arguments are predicated on a myopic view of the relevant law.  To begin, DOE mistakenly contends that Plaintiff was not a "prevailing party" in the first administrative proceeding.  (Def. Opp. 9 ("Given that Plaintiff did not receive any real relief in the first administrative proceeding, Plaintiff is not a 'prevailing party' and thus not entitled to attorneys' fees for that portion of the work performed.")).  While it is true that the relief ultimately obtained by Plaintiff was much less than originally sought, it is an overstatement to say that she was not a prevailing party.[7]  DOE also leans heavily into decisions from sister courts without analyzing whether the cases are sufficiently similar.  And DOE overlooks the many policy objectives that are vindicated by IDEA's fee-shifting provision, including the attraction of competent counsel.

For its part, CLF accurately details its considerable experience with IDEA cases; the time spent on the various proceedings in this case; and the

---

[7]     Under Second Circuit law, a "prevailing party" is a party "who has favorably effected a 'material alteration of the legal relationship of the parties' by court order."  *Garcia* v. *Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) (quoting *Buckhannon Bd. and Care Home, Inc.* v. *W. Va. Dep't of Health and Hum. Res.*, 532 U.S. 598, 604 (2001)); *see also J.S. ex rel. Z.S.* v. *Carmel Cent. Sch. Dist.*, 501 F. App'x 95, 97 (2d Cir. 2012) (summary order) ("An IHO decision on the merits constitutes 'administrative imprimatur' sufficient to change the legal relationship between the parties and render the prevailing party eligible for an award of reasonable attorney's fees.").  "The 'prevailing party' standard should be interpreted generously, and courts should grant an award of attorney's fees and costs when a party succeeds on any significant issue in litigation that achieves some of the benefit that the parties sought in bringing the suit."  *Juca* v. *Carranza*, No. 19 Civ. 9427 (ER), 2020 WL 6291477, at *3 (S.D.N.Y. Oct. 26, 2020) (citing *G.B. ex rel. N.B.* v. *Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 424 (S.D.N.Y. 2012)).  The SRO found that DOE had failed to provide a FAPE to M.L. for the 2018-2019 school year, and ordered the production of an assistive technology evaluation, the funding of a functional behavioral assessment, and the re-convening of the CSE to consider those evaluations.  (Cuddy Decl., Ex. L at 33).  While the Court will consider the degree of success in setting the reasonable hourly rates and the reasonable number of hours, it concludes that Plaintiff was a prevailing party in both administrative proceedings.

longstanding client relationship with K.E.  However, precisely because of CLF's experience in this area, the firm cannot credibly argue that the issues implicated by the two administrative proceedings here were either novel or complex.  Indeed, "DOE was not even represented by an attorney at the first hearing."  (Def. Opp. 8; *see also* Lawrence Decl. ¶ 7).  Plaintiff also fails to engage with the fact that the results she obtained were a far cry from what she sought.  As detailed in the Factual Background, Plaintiff withdrew her challenges to the 2017-2018 IEP, and most of her arguments in the first administrative proceeding were rejected, even at the SRO level.  Plaintiff's victory in the second administrative proceeding was largely by default, and even then she did not obtain all of the relief that she sought.

Earlier this year in *D.P.*, after extensive analysis of the caselaw, the Court concluded that the following rates were reasonable: $400 for Mr. Cuddy, Mr. Sterne, and Ms. Aasen; $280 for Mr. Coretti; $250 for Mr. Kopp; $180 for Mr. Velez; $125 for Ms. Cuddy and Ms. Woodard; and $100 for Ms. Bunnell, Ms. Pinchak, Mr. Meghezzi, Ms. O'Donnell, and Mr. Velez for the period of time he worked on this case as a paralegal.  *D.P.*, 2022 WL 103536, at *10.  The Court arrived at these rates after analyzing the *Johnson* factors and adopting the analyses of numerous sister courts in this District.  *Id.* at *7-10.  Rather than repeating itself unnecessarily, the Court also incorporates that analysis (with which Plaintiff's counsel is fully familiar) here by reference.[8]

---

[8]    While it is true that the administrative proceedings in the instant case persisted over a longer period of time, the legal issues addressed by the IHOs are similar.  Indeed, *D.P.* was potentially a more complex case, involving as it did a student with Fragile X

The Court's analysis in *D.P.* relied on many of the same exhibits submitted by Plaintiff in connection with the instant motion, including (i) a chart depicting information received from certain Freedom of Information Law ("FOIL") requests concerning attorneys' fees reimbursed by DOE in IDEA and similar cases, and (ii) information about rates charged by IDEA and other civil rights practitioners gleaned from public filings.  (Kopp Decl. ¶¶ 16-22 & Ex. A-L; *see also* Goldman Decl. (Dkt. #36) (offering counterarguments)).  The information provided in the two cases is substantively identical, and thus the Court does not alter its earlier conclusions regarding the significance of this information.  Additional to this information, however, are three new categories of evidence regarding attorney hourly rates.  *First*, Plaintiff has submitted a set of retention letters from CLF clients that reflect rates similar to those sought by the firm's legal professionals in this case.  (Arkontaky Decl. (Dkt. #18), Ex. A-K).[9]  The Court accepts that the letters are genuine, but agrees with Defendants' observation that they have limited probative value because the representations, by and large, did not concern FAPE administrative hearings.  (*See* Def. Opp. 16-17; Germanakos Decl. (Dkt. #34) ¶¶ 28-31).  *See also B.C.*, 2022 WL 3214374, at *7 ("The retainer agreements do not indicate the novelty and difficulty of the questions raised, the level of skill required, any relevant

---

syndrome.  *See D.P.*, 2022 WL 103536, at *9 ("The Court also accepts Plaintiff's argument that S.P.'s Fragile X syndrome 'ma[de] determining the appropriateness of a special education program for her particularly challenging given how unique her needs are in relation to this condition.' (quoting Pl. Reply 7).").

[9]  Ms. Arkontaky's declaration also includes several state court orders in which CLF was awarded the full amount of fees requested.  (Arkontaky Decl., Ex. L-N).

time limitations imposed by the client, or the results obtained in those cases.");
*C.B.* v. *N.Y.C. Dep't of Educ.*, No. 18 Civ. 7337 (CM), 2019 WL 3162177, at *7
(S.D.N.Y. July 2, 2019) (ascribing limited value to CLF retainer agreements).

    *Second*, Plaintiff includes an affidavit from Steven A. Tasher, an attorney
and principal at Wyatt Partners who offers his expert opinion on the
reasonableness *vel non* of the fees and costs sought by CLF in connection with
the two administrative proceedings and the instant federal lawsuit.  (Tasher
Decl.).  In his 56-page expert report, Mr. Tasher reviews the applicable law
concerning attorneys' fees generally and under IDEA, the procedural history of
the administrative and judicial proceedings, the backgrounds of the legal
professionals involved, and the hours billed and tasks accomplished for each.
Mr. Tasher concludes, in relevant part,

> I have reviewed the hours sought, rates sought, and fees
> sought in these matters and believe them to be
> reasonable in light of the skills required to litigate these
> cases, the importance of the rights being enforced, the
> required workload, and the objectively outstanding
> results obtained for M.L. (both from a monetary/non-
> monetary standpoint).
>
> Furthermore, I view the hours, rates, and fees sought in
> the context of the statutory construction and well-
> established principles of fee-shifting, which is to entice
> competent counsel to eschew representing only clients
> of means or serving as defense counsel for guaranteed
> payment and take on the representation of needy
> children given the high risk of receiving no
> compensation for all their hard work. In that context, I
> believe the hours, rates, and fees sought are reasonable.

(*Id.* at ¶¶ 32-33).

For avoidance of doubt, the Court accepts Mr. Tasher's recitation of the procedural history, his summary of the qualifications of the relevant CLF professionals, and his description of certain billing entries. Similarly, the Court does not quibble with the legal principles he outlines, and has cited many of the same cases in this Opinion. However, the Court is unwilling to hand over the reins, as it were, to Mr. Tasher to decide the ultimate issue of the reasonableness of the fees requested. In this regard, the Court echoes the analysis offered recently by Judge Lewis Liman:

> [Tasher's expert] report is of limited weight. Tasher's conclusion that the rates proposed by CLF are reasonable offers advice on an ultimate issue before the Court and thus is not admissible. *See Hygh* v. *Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992). Moreover, to the extent that Tasher's declaration does more than put factual evidence of fees charged before the Court and purport to express an opinion either on the reasonableness of rates or the reasonableness of hours, Tasher has not demonstrated he has any particular expertise on the issue of IDEA litigation and that opinion would be of limited weight. The underlying facts Tasher relies on do not support that CLF's requested rates are reasonable. CLF's engagement letters are relevant to the *Johnson* factor regarding the firm's customary rate, but — assuming that they established a customary rate — that is only one of the *Johnson* factors. … The fact that certain clients might have agreed at a point in the past that CLF should be paid at a particular rate does not establish that rate is reasonable. "On a fee-shifting application …, the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending." As to the three law firms Tasher mentions, the evidence before the Court fails to establish the work that they did was comparable to the work CLF was required to do in this case.

*K.O.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 10277 (LJL), 2022 WL 1689760, at *11
(S.D.N.Y. May 26, 2022) (internal citations omitted); *see also Y.S.*, 2022 WL
3572935, at *6 ("[T]he Court does not weigh heavily the declarations by
purported attorneys' fees expert Steven A. Tasher, and IDEA practitioner
Bonnie Spiro Schinagle.").

    *Third*, Plaintiff cites to a December 2020 retainer agreement between
DOE and the law firm of Hoguet, Newman, Regal & Kenney, L.L.P. ("Hoguet"),
pursuant to which Hoguet agreed to serve as outside counsel to DOE for
stipulated rates of $400 for partners, $300 for associates, and $100 for
paralegals.  (Pl. Br. 11-14; Cuddy Decl., Ex. D).  Plaintiff hastens to add that
she is "not suggesting the rates found within the agreement are reasonable, nor
that those rates are desired for the instant action," and indeed argues that
there are reasons to award higher fees to counsel for parents in IDEA cases.
(Pl. Br. 12 (citing *Sabatini* v. *Corning-Painted Post Area Sch. Dist.*, 190 F. Supp.
2d 509, 516 (W.D.N.Y. 2001))).  Instead, Plaintiff looks to the rates charged by
Hoguet to its private clients, and argues that "those rates strongly support the
hourly rates sought by Plaintiff, especially given the wide recognition of the fact
that the market rate for lawyers who represent plaintiffs on consumer actions,
and often work on a contingency basis, demand a higher rate than what is
appropriate for defense attorneys."  (*Id.* at 14).  DOE rejoins that it is
inappropriate to consider rates of a firm that it was forced to retain because of
COVID-related fiscal crises.  (Def. Opp. 22 n.10).  Irrespective of the genesis of
the retention, the Court accords only limited probative value to the retention

agreement, which did not apply to representation in administrative proceedings. In any event, the rates specified in the Hoguet agreement are similar to those this Court ultimately awards.

A final word is in order about the decisions of other courts in this District. Both parties cite to *Farbotko* v. *Clinton Cty.*, 433 F.3d 204 (2d Cir. 2005), and in particular, its discussion of the significance of rates awarded in other cases. (*See* Pl. Br. 7; Def. Opp. 4; Pl. Reply 7-9). To a degree, both sides are correct. The Second Circuit has made plain that a reasonable hourly rate is "not ordinarily ascertained simply by reference to rates awarded in prior cases," *id.* at 208. Indeed, to paraphrase the decision, "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under [IDEA] and compensation available in the marketplace. This undermines [IDEA]'s central purpose of attracting competent counsel to public interest litigation." *Id.* at 209. That said, the Court has recognized that the "case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel" can include "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district," but must also include "an evaluation of evidence proffered by the parties." *Id.*

The Court has done that here. It has reconsidered its prior decision in light of the particular facts of this case (including the limited degree of success achieved by Plaintiff), as well as more recent decisions from its colleagues and the evidence presented to it in connection with the instant motion. It has

analyzed anew the *Johnson* factors.  And the Court believes that, ultimately, the reasonable hourly rates for this case are $400 for Mr. Cuddy, Mr. Sterne, and Ms. Aasen; $300 for Mr. Mendillo; $280 for Mr. Coretti; $250 for Mr. Kopp; $180 for Mr. Velez as attorney; $125 for Ms. Cuddy, Ms. Woodard, and Mr. Slaski; and $100 for Ms. Bunnell, Ms. Pinchak, Ms. Green, Ms. Bianco, Mr. Meghezzi, Ms. O'Donnell, and Mr. Velez as paralegal.[10]  These rates reflect the time period during which the services were performed, but also account for the delay CLF has experienced in being paid.  They are likewise consistent with "the time and labor required," "the novelty and difficulty of the questions involved," and "the level of skill required to perform the legal service properly." *Lilly*, 934 F.3d at 228 (quoting *Arbor Hill*, 522 F.3d at 186 n.3).

### c.   Determining Hours Reasonably Expended

The Court now proceeds to determine the reasonable number of hours expended by these legal professionals.  To review, in determining a reasonable number of hours, a court "must exclude '[h]ours that are excessive, redundant, or otherwise unnecessary,' allowing only those hours that are 'reasonably expended.'" *Hernandez* v. *Berlin Newington Assocs., LLC*, 699 F. App'x 96, 97 (2d Cir. 2017) (summary order) (quoting *Kirsch* v. *Fleet St., Ltd.*, 148 F.3d 149, 172-73 (2d Cir. 1998)); *see also Wise* v. *Kelly*, 620 F. Supp. 2d 435, 442 (S.D.N.Y. 2008) ("If the court finds that the fee applicant's claim is excessive or insufficiently documented, or that time spent was wasteful or redundant, the

---

[10]   The differences in rates among the paralegals reflect Ms. Cuddy's senior position at CLF, Ms. Woodard's lengthy experience as a paralegal, and Mr. Slaski's law degree.

court may decrease the award, either by eliminating compensation for unreasonable hours or by making across-the-board percentage cuts in the total hours for which reimbursement is sought." (internal citations omitted)).

In prior fee petitions, this Court has alternated between the use of an across-the-board percentage reduction and the disallowance of certain hours billed.  *Compare D.P.*, 2022 WL 103536, at *10 (disallowing certain time entries billed), *with Marzullo* v. *Karmic Release Ltd.*, No. 17 Civ. 7482 (KPF), 2018 WL 10741649, at *3 (S.D.N.Y. Apr. 24, 2018) (imposing across-the-board reduction of 15%).  Both are acceptable methods of arriving at a reasonable number of hours.  In this case, the Court has determined to consider separately the administrative and litigation components of this case, reduce certain entries for travel time, and otherwise impose specific percentage reductions in the hours sought.

### i. The First Administrative Proceeding (IH 175911)

Plaintiff seeks reimbursement for the following hours billed by CLF legal professionals to the first administrative proceeding:

- Andrew Cuddy (attorney): 1.6

- Jason Sterne (attorney):  37.2

- Benjamin Kopp (attorney): 14.9

- Justin Coretti (attorney): 0.10

- Nina Aasen (attorney): 70.7

- Nina Aasen (attorney - travel): 45.10
  (billed at half the hourly rate for work)

- Nina Aasen (attorney - travel): 1.0
  (billed at the hourly rate of $90)

- Allison Bunnell (paralegal): 4.8

- Amanda Pinchak (paralegal): 23.3

- Sarah Woodard (paralegal): 0.3

- John Slaski (paralegal): 0.4

- Raul Velez (as paralegal): 36.6

- Shobna Cuddy (paralegal): 0.3

(Cuddy Decl. ¶ 94 & Ex. A).  In sum, Plaintiff claims 170.6 hours of attorney time and 65.7 hours of paralegal time, for a total of 236.3 hours for the first administrative proceeding.  Substantiation for this request includes CLF billing records and summaries for the relevant time period.  (*Id.*).  Mr. Cuddy also advises that, with respect to the first administrative proceeding, CLF has imposed discretionary reductions totaling 27.4 hours and $7,425.00.

DOE's first argument is also its most sweeping:  Plaintiff is simply not a "prevailing party" with respect to the first administrative proceeding, and thus is not entitled to recover any attorneys' fees for work performed in connection with that proceeding.  (Def. Opp. 9; *see also id.* at 17).  Because the Court has previously rejected this argument, it considers DOE's other complaints regarding CLF's billing records, which include arguments that CLF billed excessively for hearing requests, hearing preparation, post-hearing briefing, post-hearing procedures and implementation, administrative tasks, and travel time.  (*Id.* at 23-27; Nimmer Decl. (Dkt. #33) ¶¶ 4-18).  Those claims have more traction.

The Court has reviewed with care CLF's billings for the first administrative proceeding, which encompassed client intake; evaluations of documents; preparation of a hearing request; preparation for and attendance at hearings; post-hearing submissions; review of the IHO's FOFD; preparation of materials for an appeal to the SRO; and issues of implementation.  (Cuddy Decl., Ex. A).  The billing statements are clear as to the tasks performed and the time allotted thereto by each legal professional.  The Court accepts CLF's representations that clerical and similarly routine matters were handled in the main by paralegals, and that CLF has already implemented discretionary reductions to the fees it seeks.  That said, the Court observes that certain billing entries are unreasonable.  For example, excessive hours were billed by Mr. Kopp for drafting the hearing request, and by Mr. Velez for drafting the post-hearing brief.[11]  In addition, CLF employed top-heavy staffing, in the form of having Ms. Aasen and Mr. Sterne performing most of the attorney work, rather than more junior associates.  And the Court reiterates its prior disapproval of CLF attorneys billing, even at half their normal hourly rates, for travel from Ithaca to Brooklyn or Manhattan.  *See D.P.*, 2022 WL 103536, at *13 (reducing entries for travel time and citing other decisions from this District reducing or rejecting CLF entries for travel time); *see also Y.S.*, 2022 WL 3572935, at *5 (collecting cases).

---

[11]    The Court recognizes the discretionary reductions made by CLF to account for Mr. Velez getting up to speed when he joined the case in March 2019.

The Court begins by reducing all of Ms. Aasen's travel time to 10 hours, in accordance with its prior decision.  With respect to the hours billed for legal work, the Court agrees with DOE that they are excessive in light of the nature of the administrative proceeding and the length and complexity of CLF's written submissions.  More fundamentally, the Court believes that a reduction in hours is warranted to reflect the limited success obtained by Plaintiff in the first administrative proceeding.  As noted by the Supreme Court:

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.  Again, the most critical factor is the degree of success obtained.

*Hensley*, 461 U.S. at 436; *see also id.* at 436-37 ("There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").  Accordingly, the Court reduces CLF's non-travel hours by 30 percent to account for the combination of the firm's excessive billing and its limited success.

In light of the above determinations, the Court awards fees to Plaintiff's counsel for the first administrative proceeding as follows:

| Timekeeper | Reasonable Rate | Reasonable Hours Billed | Amount |
|---|---|---|---|
| A.Cuddy | $400.00 | 1.12 | $448.00 |
| Sterne | $400.00 | 26.04 | $10,416.00 |
| Kopp | $250.00 | 10.43 | $2,607.50 |
| Coretti | $280.00 | 0.07 | $19.60 |
| Aasen | $400.00 | 49.49 | $19,796.00 |
| Aasen (travel) | $200.00 | 10.00 | $2,000.00 |
| Bunnell | $100.00 | 3.36 | $336.00 |
| Pinchak | $100.00 | 16.31 | $1,631.00 |
| Woodard | $125.00 | 0.21 | $26.25 |
| Slaski | $125.00 | 0.28 | $35.00 |
| Velez (paralegal) | $100.00 | 25.62 | $2,562.00 |
| S.Cuddy | $125.00 | 0.21 | $26.25 |
| | | Total: | $39,903.60 |

### ii.     The Second Administrative Proceeding (IH 194397)

Plaintiff seeks reimbursement for the following hours billed by CLF legal professionals to the second administrative proceeding:

- Andrew Cuddy (attorney): 2.2
- Kevin Mendillo (attorney): 54.8
- Raul Velez (attorney): 8.8
- Allyson Green (paralegal): 4.4
- Burhan Meghezzi (paralegal): 1.6
- Cailin O'Donnell (paralegal): 5.8
- Emma Bianco (paralegal): 3.8

▪ Shobna Cuddy (paralegal): 2.2

(Cuddy Decl. ¶ 94 & Ex. B). In sum, Plaintiff claims 65.8 hours of attorney time and 17.8 hours of paralegal time, for a total of 83.6 hours for the second administrative proceeding. Once again, substantiation for this request includes CLF billing records and summaries for the relevant time period. (*Id.*). Mr. Cuddy also advises that, with respect to the second administrative proceeding, CLF has imposed discretionary reductions totaling 16.4 hours and $5,652.50.

While DOE concedes that Plaintiff was a prevailing party entitled to attorneys' fees and costs incurred in connection with the second administrative proceeding (*see* Def. Opp. 1, 3, 4), it argues again for a reduction in the number of hours billed because of overbilling (*id.* at 23-28; *see also* Nimmer Decl. ¶¶ 19-25). In this regard, DOE emphasizes that the second administrative hearing was only "lightly contested." (Def. Opp. 7). But as this Court has noted previously, "[h]aving not advised Plaintiff's counsel of the precise nature of its opposition, and having refused to stipulate to any issues prior to the hearing …, Defendant is on the hook for the reasonable costs of preparing for that hearing." *D.P.*, 2022 WL 103536, at *9 (collecting cases).

Here, too, the Court has reviewed with care CLF's billing records for the second administrative proceeding. This particular representation encompassed client discussions; preparation of a second hearing request; review and consideration of a proposed resolution from DOE; multiple consultations with consultant and/or expert witnesses; and preparation for a telephonic hearing

36

that lasted approximately one hour.  As before, the Court identifies certain inefficiencies in the billing, including replacing Mr. Velez with Mr. Mendillo on the matter after several months,[12] and excessive time spent preparing the hearing request and for the hearing itself.  However, the amount of inefficiencies is less than with the first proceeding, likely because so much of the matter was handled by Mr. Mendillo.  For this reason, the Court will reduce the number of hours sought by CLF for the second administrative proceeding by 15 percent.

Accordingly, the Court awards fees to Plaintiff's counsel for the second administrative proceeding as follows:

| Timekeeper | Reasonable Rate | Reasonable Hours Billed | Amount |
|---|---|---|---|
| A.Cuddy | $400.00 | 1.87 | $748.00 |
| Mendillo | $300.00 | 46.58 | $13,974.00 |
| Velez (attorney) | $180.00 | 7.48 | $1,346.40 |
| Green | $100.00 | 3.74 | $374.00 |
| Meghezzi | $100.00 | 1.36 | $136.00 |
| O'Donnell | $100.00 | 4.93 | $493.00 |
| Bianco | $100.00 | 3.23 | $323.00 |
| S.Cuddy | $125.00 | 1.87 | $233.75 |
|  |  | **Total:** | **$17,628.15** |

---

[12]     The Court recognizes that part of that transition was addressed by discretionary reductions.

### iii.    The Federal Litigation

The IDEA gives a prevailing parent the right to recover their reasonable attorneys' fees and costs incurred in a federal court action related to vindicating their rights, including their right to recover attorneys' fees.  *See C.D.* v. *Minisink Valley Cent. Sch. Dist.*, No. 17 Civ. 7632 (PAE), 2018 WL 3769972, at *11 (S.D.N.Y. Aug. 9, 2018); *G.T.*, 2020 WL 1516403, at *9 ("a plaintiff may seek 'fees-on-fees' under the IDEA").  "Although '[a] request for attorney's fees should not result in a second major litigation[,]' neither should the threat that counsel will not receive its reasonable fees be a bludgeon that can be used by the losing school district to coerce the parent at the administrative stage to an inadequate settlement or to a compromise of the parent's rights."  *M.H.*, 2021 WL 4804031, at *21 (internal citations omitted).

Plaintiff seeks reimbursement for the following hours billed by CLF legal professionals for their work on the instant litigation:

- Andrew Cuddy (attorney): 5.3

- Kevin Mendillo (attorney):  26.7

- Justin Coretti (attorney): 33.4

- Shobna Cuddy (paralegal): 3.0

- Cailin O'Donnell (paralegal): 0.8

(Cuddy Reply Decl., Ex. A).  In sum, after implementing discretionary reductions of 2.1 hours and $792.50, Plaintiff claims 65.4 hours of attorney time and 3.8 hours of paralegal time, for a total of 69.2 hours for the litigation component.  Arguing that DOE engaged in dilatory conduct in both the

administrative and litigation components of this case, Plaintiff argues that

"Defendant should not be awarded a windfall in fee reductions for its tactics."

(Pl. Br. 22).

Here, too, DOE objects.  To begin, DOE argues that, in the event the

Court awards less than $67,500.00 for CLF's work performed up through

August 27, 2021 — the date on which DOE made a formal settlement offer in

that amount to resolve the fees and costs for these matters — CLF should

receive no fees for work performed after that date.  (Def. Opp. 29; *see also* Bowe

Decl. (Dkt. #35) ¶ 82 ("[O] n August 27, 2021, Defendant served a formal offer

of $67,500.00 for work performed up to August 27, 2021 (the date of

Defendant's formal offer), which expired after ten days."); *id.*, Ex. III (Offer of

Settlement)).

Section 1415(i)(3)(D) provides in relevant part that

> [a]ttorneys' fees may not be awarded and related costs
> may not be reimbursed in any action or proceeding
> under this section for services performed subsequent to
> the time of a written offer of settlement to a parent if —
>
> (I) the offer is made within the time prescribed by Rule
> 68 of the Federal Rules of Civil Procedure or, in the case
> of an administrative proceeding, at any time more than
> 10 days before the proceeding begins;
>
> (II) the offer is not accepted within 10 days; and
>
> (III) the court or administrative hearing officer finds that
> the relief finally obtained by the parents is not more
> favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D); *see generally T.A.*, 2022 WL 3577885, at *7.  Thus,

where the amount of fees and costs incurred through the offer of settlement

date is less than the offered settlement amount, courts will not award fees for fees and costs incurred after that date.  *See H.C.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 844 (JLC), 2021 WL 2471195, at *10-11 (S.D.N.Y. June 17, 2021) (declining to award fees for work performed after the date of a settlement offer where the fee award was less favorable to the parents than the settlement offer); *R.P.*, 2022 WL 1239860, at *6 (same).

This Court has awarded Plaintiff a total of **$57,531.75** in attorneys' fees for the two administrative proceedings, and, as detailed further below, awards a total of **$1,274.02** in compensable costs.  To determine whether Section 1415(i)(3)(D)'s cap on fees is implicated, the Court calculates the fees incurred for the federal litigation up to and including August 27, 2021, as follows:

| Timekeeper | Reasonable Rate | Hours Billed Through August 27, 2021 | Amount |
|---|---|---|---|
| A.Cuddy | $400.00 | 1.9 | $760.00 |
| Mendillo | $300.00 | 11.1 | $3,330.00 |
| S.Cuddy | $125.00 | 1.5 | $187.50 |
| | | **Total:** | **$4,277.50** |

The costs and fees incurred through August 27, 2021, totaled **$63,083.27**; because that figure is below DOE's $67,500.00 settlement offer, CLF cannot recover for any fees charged after that date.

To be sure, the IDEA makes clear that "an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer."  20 U.S.C.

40

§ 1415(i)(3)(E).  However, Plaintiff does not argue substantial justification in either of her briefs.  (*See generally* Pl. Br.; Pl. Reply).  Mr. Cuddy suggests in his opening declaration that DOE's settlement offer would have required Plaintiff to waive any claim to interested on the settlement amount, and opines that such language was "troubling when taking into account Defendant's history of late and untimely payments of settlement amounts agreed to in previous cases."  (Cuddy Decl. ¶¶ 95-96).  However, this Court agrees with Judge Furman that the mere possibility of a delay in payment does not constitute substantial justification for rejecting an offer of settlement.  *See R.P.*, 2022 WL 1239860, at *6 ("[I]f the DOE were to delay payment past the ninety-day statutory period for a municipality to pay all sums due to a settling plaintiff, *see* N.Y. C.P.L.R. § 5003-a, [Plaintiff] could bring a separate action seeking an award of interest on the settlement amounts, as CLF has done in other recent cases." (collecting cases)).

Separate from its cap claim, DOE advances various claims of excessive billing in the federal action, including allegations of excessive time spent by CLE in drafting the complaint, preparing the summons and cover sheet, and drafting the materials for the instant motion.  (Def. Opp. 19-23; Germanakos Decl. (detailing alleged instances of excessive billing)).  However, given the amount of fees that Plaintiff incurred after August 27, 2021, and that this Court will not award, the Court will not implement any further reductions to the fees awarded in the federal action.  *Cf. F.N.*, 2022 WL 3544128, at *7 (reducing fees billed to federal action by 20 percent, while also disallowing fees

for work performed after settlement offer).  The Court thus awards **$4,277.50** for attorneys' fees incurred in the instant litigation.

### 3. The Court Awards Reasonable Costs and Expenses

Plaintiff's counsel seeks $4,077.24 in reimbursement for costs incurred in this case, including $758.50 for copying and printing (at 50¢/page), $402.00 in filing fees, $1,029.60 for lodging, $918.30 for mileage, $214.18 for meals, $70.00 for faxing (at $2.00/page), $33.55 for postage, $441.61 for transportation (in the form of bus tickets and car service fees), and $40.50 for tolls.  (Cuddy Decl. ¶ 94 & Ex. A-B; Cuddy Reply Decl. ¶¶ 5-6 & Ex. A).  Defendant acknowledges that the filing and postage fees are recoverable, but seeks disallowance of faxing, lodging, and meals expenses, and steep reductions to the printing and transportation-related costs.  (Def. Opp. 4, 26-28).

A district court may award reasonable costs to the prevailing party in IDEA cases.  *See* 20 U.S.C. § 1415(i)(3)(B); *see also Arlington Cent. Sch. Dist. Bd. of Educ.* v. *Murphy*, 548 U.S. 291, 297-98 (2006) (holding "costs," as used in 20 U.S.C. § 1415(i)(3)(B), to refer to the list set out in 28 U.S.C. § 1920, the statute governing taxation of costs in federal court); *H.C.*, 2021 WL 2471195, at *11 ("A district court may award reasonable costs to the prevailing party in IDEA cases." (quoting *C.D.*, 2018 WL 3769972, at *12)).

The Court approves without further discussion Plaintiff's requests for reimbursement of filing fees and postage, totaling $435.55.  As for printing and copying, courts in this District generally limit such costs to 10 to 15 cents per

page, though the practice is not uniform.  *See, e.g., R.G.* v. *N.Y.C. Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *6 (S.D.N.Y. Sept. 26, 2019).  Adopting the reasoning of Judge Liman in *M.H.*, this Court will award printing and copying costs at a rate of 20 cents per page, resulting in a printing and photocopying award of $303.40.  *M.H.*, 2021 WL 4804031, at *27.  The Court disallows, however, Plaintiff's request for faxing costs.  *See S.J.*, 2020 WL 6151112, at *7 ("In addition, the Court declines to award fax charges at $2 per page as such charges are not reasonable.").

That leaves travel expenses.  "A prevailing party in IDEA litigation is entitled to recover for costs incurred during reasonable travel."  *C.D.*, 2018 WL 3769972, at *13.  In *C.D.*, Judge Engelmayer determined:

> For the reasons discussed above in connection with the billing of travel time, it is not reasonable to shift most of the Cuddy Law Firm's travel costs to [defendant]. Having determined that only a one-hour — rather than three and a quarter-hour — trip to the site of the IDEA administrative proceedings is properly compensable, the Court will make a proportionate reduction in mileage costs, which appear largely to have been incurred traveling to and from the Cuddy Law Firm's offices (or the lawyers' homes) and the hearings .... The Court will thus reduce the requested mileage costs by 70%, from $1,721.54 for the administrative phase of the litigation to $516.46.

*Id.*  For similar reasons, he reduced the costs awarded for meals by 70%.  *Id.*  Finally, Judge Engelmayer court awarded no costs for lodging, because "[a]n attorney who was sited within a reasonable distance of the hearing location could commute daily to the hearings, obviating any need for lodging."  *Id.*  Using similar logic, this Court will reduce by 70% Plaintiff's requests for

mileage (resulting in a mileage award of $275.49), tolls (resulting in a toll award of $12.15), meals (resulting in a meal award of $64.25), parking (resulting in a parking award of 50.70), and transportation costs (resulting in a transportation award of $132.48); and will disallow the requested lodging costs. As a result, the Court awards total costs of **$1,274.02**.

### 4.    The Court Awards Post-Judgment Interest

Finally, the Court grants Plaintiff's request for post-judgment interest. "Pursuant to 28 U.S.C. § 1961, '[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.'" *Tru-Art Sign Co.* v. *Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (internal citation omitted); *accord H.C.*, 2021 WL 2471195, at *12; *S.J.*, 2021 WL 100501, at *5.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS IN PART Plaintiff's motion for summary judgment on the issue of attorneys' fees and costs as follows:  It awards attorneys' fees in the aggregate amount of **$61,809.25**, and costs in the amount of **$1,274.02**.  Accordingly, for the reasons set forth in this Order, the Court ORDERS that judgment be entered against Defendant DOE in that amount.

The Clerk of Court is further directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   September 23, 2022
       New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge